[Cite as *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 2013-Ohio-5736.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99832

# BOARD OF HEALTH OF CUYAHOGA COUNTY

## PLAINTIFF-APPELLEE

vs.

# LIPSON O'SHEA LEGAL GROUP

## DEFENDANT-APPELLANT

## JUDGMENT:
REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-784198

**BEFORE:**  Jones, J., Celebrezze, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**  December 26, 2013

**ATTORNEYS FOR APPELLANT**

Ronald A. Annotico
Michael J. O'Shea
Lipson O'Shea Legal Group
Beachcliff Market Square
19300 Detroit Road, Suite 202
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Brian R. Gutkoski
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Lipson O'Shea Legal Group ("law firm"), appeals the trial court's granting of summary judgment in a declaratory judgment action in favor of the plaintiff-appellee, Board of Health of Cuyahoga County, Ohio ("BOH"). For the reasons that follow, we reverse.

## I. Procedural History and Facts

{¶2} In January 2012, the law firm emailed the following public records request to the BOH:

This is a request for public records to the Cuyahoga County BOH. Pursuant to RC 149.43 (Ohio Public Records Act), I hereby request documentation or information of all homes in 2008, 2009, 2010 and 2011 in Cuyahoga County where a minor child was found to have elevated blood lead levels in excess of 10 mb/D1.

* * *

{¶3} Pursuant to the law firm's request, the BOH identified 110 files consisting of more than 5,000 pages of documents, but concluded that the documents contained "protected health information" that would identify, or could be used to identify, the individuals who were subject of that information. The BOH determined it was prohibited by law from producing any of the requested records.

{¶4} The BOH subsequently filed a complaint for declaratory judgment in Cuyahoga County Common Pleas Court, asking the court to determine whether the records

were exempt from release as public records under R.C. 149.43. The board filed 12 lead assessment investigation files as a representative sample for the court's in camera review. The records were filed under seal.

{¶5} The 12 sample files included: (1) Comprehensive Questionnaire of Parent/Guardian of Children With Elevated Blood Lead Levels, which included the child's name, date of birth, address, family and school information, blood test results, and the names, addresses, telephone numbers and employment information of the child's parent/guardian; (2) Lead Risk Assessment Report, which identified the property owner and address; (3) Letter of Notice to the child's parent/guardian; (4) Letter of Notice to the property owner; (5) Lead Clearance Report, which included the property owner's name and address and a corresponding letter to the child's parent/guardian; (6) Order to Control Lead Hazard sent to the property owner and listing the property address; and (7) other investigatory documents that identified the property owner and/or gave the property's address.

{¶6} It is undisputed that the information contained in the documents was not set forth in summary, statistical, or aggregate form.

{¶7} The BOH moved for summary judgment, which the law firm opposed. The trial court granted the BOH's motion, finding that the records contained protected health information that described a child's past, present, or future physical condition that would reveal or could be used to reveal the child's identity and, as such, were confidential and exempt from release as a public record pursuant to R.C. 3701.17 and 149.43(A)(1)(v).

**{¶8}** The law firm filed a timely notice of appeal, and now raises one assignment of error for our review: "The trial court erred in granting appellee's motion for summary judgment."[1]

## II.   Law and Analysis

**{¶9}** In its sole assignment of error, the law firm argues that the trial court erred in granting the BOH's motion for summary judgment.

**{¶10}** We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 7, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

**{¶11}** Under Civ.R. 56, summary judgment is appropriate when, (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

**{¶12}** The moving party carries an initial burden of setting forth specific facts that

---

[1] On appeal, the parties do not address the arguments made in the trial court with regard to the law firm's request being improper as vague and overbroad or that disclosure is only warranted if the law firm can show that the records would assist in monitoring the BOH's compliance with its statutory duties. Therefore, we will not address these aspects of the trial court's opinion in this appeal.

demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.* at 293.

Ohio Public Records Act

**{¶13}** The Ohio Public Records Act is codified at R.C. 149.43. Courts "construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, ¶ 17, citing *State ex rel. Rocker v. Guernsey Cty. Sheriffs' Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6. Exceptions to disclosure under the Public Records Act are strictly construed against the public records custodian, and the custodian has the burden to establish the applicability of an exception. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10, citing *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30. The records custodian does not meet this burden if it has not proven that the requested records "fall squarely within the exception." *Jones-Kelley* at *id.*

**{¶14}** R.C. 149.43(A)(1)(v) provides that "[r]ecords the release of which is prohibited by state or federal law" are not "public records." Thus, a record whose release is prohibited by a state or federal law, is not a public record and not subject to

disclosure.

**{¶15}** The BOH argues that state law prohibits the disclosure of the requested records; specifically, R.C. 3701.17, which prohibits the BOH from releasing records that contain "protected health information."

**{¶16}** R.C. 3701.17(A)(2) defines "protected health information" as:

> information, in any form, including oral, written, electronic, visual, pictorial, or physical that describes an individual's past, present, or future physical or mental health status or condition, receipt of treatment or care, or purchase of health products, if either of the following applies:
>
> (a) The information reveals the identity of the individual who is the subject of the information.
>
> (b) The information could be used to reveal the identity of the individual who is the subject of the information, either by using the information alone or with other information that is available to predictable recipients of the information.

**{¶17}** Protected health information "reported to or obtained by the director of health, the department of health, or a board of health of a city or general health district is confidential and shall not be released" unless written consent is obtained by the affected party or unless the information falls within four enumerated exceptions. R.C. 3701.17(B)(1)-(4). None of the exceptions apply to the case at bar.

**{¶18}** The law firm contends that many of the records it requested do not contain "protected health information" as defined by R.C. 3701.17(A)(2) or, once redacted, will not contain protected health information. Therefore, the law firm argues, many of the

documents it seeks are not exempt from disclosure.

{¶19} The law firm relies on the Ohio Supreme Court's decision in *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181, to support its position. In *Daniels*, a local newspaper filed a mandamus action seeking release, pursuant to the Ohio Public Records Act, of the Cincinnati Health Department's lead-contamination notices. The department had issued notices to property owners who owned homes and apartments that housed children whose blood tests revealed elevated lead levels. The health department refused the newspaper's request, citing federal privacy laws (HIPAA).

{¶20} The Ohio Supreme Court found that the lead-citation notices and lead assessment reports did not contain protected health information under HIPAA because the notices and reports did not identify a particular child with any specific identifiable information. Thus, the notices did not contain "protected health information" under HIPAA.

{¶21} The court further found even if the lead-citation notices and lead-risk assessment reports contained "protected health information," the reports would be subject to disclosure under the "required by law" exception to HIPAA because the Ohio Public Records Law required disclosure of these reports, and HIPAA did not supersede state disclosure requirements. *Id.* at paragraph two of the syllabus.

{¶22} The BOH argues, and we agree, that *Daniels* is distinguishable from the instant case. Not only are we interpreting a state law in this case, but many of the records

do contain at least some identifying information.

{¶23} We find the recent Ohio Supreme Court decision in *O'Shea*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, more instructive. In *O'Shea*, the law firm requested copies of documents that documented all instances of lead poisoning in the last 15 years in any CMHA dwelling. The requested records included:

> resident information, including the name, address, and telephone number of the resident and any children's names and dates of birth * * * general information, including where the child was likely exposed to lead, when the family moved into the home, the addresses, ages, and conditions of the dwellings in which the child resided in the past 12 months, and the dates of residency, and similar information if the child is cared for away from home * * * queries designed to determine the child's exposure to lead, including lead-based paint and lead-contaminated dust hazards, lead-in-soil hazards, occupational and hobby-related hazards, child-behavior risk factors, and other household-risk factors. For the occupational hazards, the questionnaire requests the family or other occupants' names, places of employment, jobs, and probable lead exposure on the job.

*Id.* at ¶ 10.

{¶24} The records also included a "CMHA authorization for the release of medical information used to obtain a child's medical records held by the Cleveland Department of Public Health Lead Poisoning Prevention Program." *Id.* The release form included the

"name of the parent or guardian of the minor child, the name, age, and address of the child, and the parent's or guardian's signature and Social Security number." *Id.* CMHA refused to release any of the requested records, arguing that they were not public records. The Ohio Supreme Court determined that although CMHA's lead-poisoning records contained identifying information that should not be disclosed, the records should not be completely excluded from release. The court noted that the lead-poisoning forms:

> further CMHA's statutory duty to "provide safe and sanitary housing accommodations to families of low income within that district." Like the lead-citation notices and assessment reports in *Daniels*, the residence addresses and the substantive information concerning general, nonidentifying information, lead-based paint and lead-contaminated dust hazards, water-lead hazards, lead-in-soil hazards, occupational or hobby hazards, and child-behavior risk factors would all be pertinent to an analysis of whether CMHA took steps to provide safe housing in specific CMHA dwellings with possible lead hazards. Release of this information would help to hold CMHA accountable for its statutory duty of reducing or eliminating any lead-related hazard in its residences and would reveal the agency's success or failure in doing so, without requiring release of much of the residents' personal information.

*Id*. at ¶ 34.

{¶25} The court determined that release of any non-identifying information should

be allowed and, further, that residence addresses were obtainable under R.C. 149.43 because "the addresses contained in the completed lead-poisoning questionnaires and releases here help the public monitor CMHA's compliance with its statutory duty to provide safe housing." *Id.* at ¶ 35. The court, however, limited disclosure so that any personal identifying information would not be obtainable, including:

> the names of parents and guardians, their Social Security and telephone numbers, their children's names and dates of birth, the names, addresses, and telephone numbers of other caregivers, and the names of and places of employment of occupants of the dwelling unit, including the questionnaire and authorization.

*Id*. at ¶ 36.

{¶26} In the instant case, the BOH argues that *O'Shea* may be distinguished from this case because the *O'Shea* court did not consider whether R.C. 3701.17 prohibited the release of documents pursuant to the "prohibited by state law exception" found in R.C. 149.43(A)(1)(v). According to the BOH, this case differs from *O'Shea* because state law specifically blocks boards of health from disclosing protected health information.

{¶27} While the law firm concedes that some of the records it requested may contain "protected health information," as defined in R.C. 3701.17, it argues that there are a number of documents within the subject records that do not contain any medical or health related information and do not identify anyone other than the landlord property owner. According to the law firm, those documents do not contain any "protected health information," as defined by the statute, and even if a particular document did contain such information, the BOH had a duty to redact the protected information and then release the

redacted records pursuant to its public records request.

{¶28} In its opinion granting the BOH summary judgment, the trial court determined that all the requested documents, including those that contained only non-identifying information, were exempt from disclosure under R.C. 143.01(A)(1)(v) because their release was prohibited by R.C. 3701.17. The court opined:

> the records include descriptions of children's physical condition, i.e. lead poisoning as diagnosed by test results included therein, and either reveal the identity of the individual child by name, address, and date of birth or include information that could be used to reveal the identity of the child and therefore constitute "protected health information."
>
> The investigations that are the subject of the records are instituted for the very reason that the children have been diagnosed as having elevated blood lead levels. Even if the personal information concerning these children and their parents was redacted so that their names, addresses, dates of birth, telephone numbers, test results, schools attended, sibling and/or employment information would not be revealed, the non-personal identifying information that remains, communications to the property owners that include their names and addresses and information about the properties at issue could be used with other information that is available to predictable recipients of the information, to reveal the identity of the individual child.
>
> Moreover, even if some portions of the information contained in the records do not constitute "Protected health information," the fact remains that the information is not in a summary, statistical, or aggregate form and therefore, under R.C. 3701.17(C)[,] it may not be released.

{¶29} As it pertains to this case, the health information the BOH is charged with protecting its information, in any form, that describes a child's past, present, or future physical or mental health status or condition, receipt of treatment or care, if the information reveals the child's identity or could be used to reveal the child's identity,

either by using the information alone or with other information that is available to predictable recipients of the information.

{¶30} Some of the information contained in the records constitutes "protected health information" as defined in R.C. 3701.17(A). Therefore, pursuant to R.C. 143.01(A)(1)(v) and R.C. 3701.17, that information is not subject to disclosure. We decline, however, to determine that all the information the law firm sought is protected health information, which would render it exempt from production.

{¶31} In other words, a blanket exemption, which is what the BOH seeks, is not appropriate, nor does it uphold the intent of the Public Records Act. Instead, the BOH must consider each document to determine if the record contains "protected health information," and redact the document accordingly. If a record contains some material that is excepted from disclosure, the governmental body is obligated to disclose the nonexcepted material, after redacting the excepted material. *State ex rel. Natl. Broadcasting Co. v. Cleveland*, 38 Ohio St.3d 79, 85, 526 N.E. 2d 786 (1988).

{¶32} Once the identifying personal information is redacted, if the information contained in the record is still "protected health information," i.e., it could still be used to identify the child, then that document is not subject to disclosure. But if the document contains only non-identifying information (of the affected child, family member, or parent/guardian) either on its face or after redaction, it does not, by definition contain "protected health information" and is subject to disclosure.

{¶33} After a de novo review of the sample documents, we note that some of the

documents, such as Letters of Notice to the landlord property owner, do not on their face contain "protected health information" because they do not describe a child's past, present, or future physical or mental health status or condition, receipt of treatment or care.

{¶34} We agree with the BOH that the child data forms that include a child's medical information are not subject to disclosure, even after redaction, because those forms, in and of themselves, are "protected health information."   But we do not agree that the disclosure of (1) the property owner's name and address, if the property owner is not the parent/guardian of the affected child, and (2) the address of the property, are sufficient to trigger the provision in R.C. 3701.17(A)(2)(b) that prohibits disclosure if the information could be used to reveal the affected child's identity "if used with other information that is available to predictable recipients of the information."

{¶35} Therefore, the landlord property owner's name and address and the property's address are subject to disclosure.   But any personal identifying information, including, but not limited to, the affected child's and parent/guardian's name, caregiver information, social security numbers, addresses, dates of birth, telephone numbers, test results, schools attended, sibling, and/or parent/guardian employment information must be redacted.

{¶36} In *O'Shea*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, the Ohio Supreme Court specifically noted that release of the requested information "would help to hold CMHA accountable for its statutory duty of reducing or eliminating any lead-related hazard in its residences and would reveal the agency's success or failure in doing so,

without requiring release of much of the residents' personal information." *Id.* at ¶ 34.

**{¶37}** In this case, the BOH is currently operating a lead hazard control and health homes program under a $3.4 million federal grant and "endeavors to pursue elimination of lead hazards each year." Affidavit of BOH Commissioner Terry Allan, ¶ 16. Release of the requested information could likewise help to hold the BOH accountable for its duty and promise to reduce lead-related hazards in Ohio's largest county and reveal its successes or failures in doing so, also without requiring the release of prohibited information.

**{¶38}** In light of the above, the trial court erred in granting summary judgment to the BOH. The sole assignment of error is sustained.

**{¶39}** Accordingly, judgment reversed and case remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant recover from appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., P.J., and TIM McCORMACK, J., CONCUR