[Cite as *Walsh v. Ohio Dept. of Health*, 2022-Ohio-272.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Patrick Walsh, | : | |
| Relator-Appellant, | : | No. 21AP-109 |
| | | (C.P.C. No. 20CV-6561) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Health, Bureau of Vital Statistics, et al., | : | |
| | : | |
| Respondents-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on February 1, 2022

**On brief:** *Kegler Brown Hill & Ritter, LPA, Ralph E. Breitfeller,* and *Shana DeMooy*, for appellant. **Argued:** *Ralph E. Breitfeller.*

**On brief:** *Dave Yost*, Attorney General, *William C. Greene,* and *Theresa R. Dirisamer*, for appellant Ohio Department of Health. **Argued:** *Theresa R. Dirisamer.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1}   Relator-appellant, Patrick Walsh, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion to dismiss of respondents-appellees, Ohio Department of Health, Bureau of Vital Statistics, and Karen Sorrell, Chief, Bureau of Vital Statistics (collectively "ODH").  For the following reasons, we affirm.

I.  **Facts and Procedural History**

{¶ 2}   In August 2020, Walsh submitted a public records request with ODH requesting the following:  "For all deaths in the State of Ohio from 1/1/2020 to the present, please provide the following information:  First Name of Decedent, Middle Name (initial)

of Decedent, Last Name of Decedent, Date of Death of Decedent, Date of Birth of Decedent, Gender of Decedent, Last Known Address of Decedent (including city, state & zip code), Social Security Number of Decedent (last 4 digits will suffice), Primary Underlying ICD-10 cause of death code, Other Contributing ICD-10 Cause of Death Codes, Occupation of Decedent, Industry of Decedent." (Ex. A, attached to Dec. 22, 2020 Mot. for Leave to File Second Am. Compl. Instanter.) A few weeks later, Walsh clarified that he was seeking ODH's "Death Registry," containing all the above information, from January 1, 2020, to the present. ODH denied Walsh's request.

{¶ 3} In October 2020, Walsh initiated this matter against ODH seeking a writ of mandamus to compel ODH to comply with his public records request. In February 2021, and after Walsh filed first and second amended petitions, ODH filed a motion to dismiss pursuant to Civ.R. 12(B)(6). Later that month, the trial court granted ODH's motion to dismiss.

{¶ 4} Walsh timely appeals.

## II. Assignments of Error

{¶ 5} Walsh assigns the following errors for our review:

> 1. The trial court erred by dismissing Relator-Appellant's Second Amended Petition on the grounds that R.C. 3701.17 prohibited disclosure of the cause of death listed in Ohio Department of Health death records.
>
> 2. The trial court erred in holding that the fact that death certificates, including the cause of death, are otherwise obtainable does not make the same information, maintained by the Department of Health, obtainable through a public records request.
>
> 3. The trial court erred in holding that the Department of Health's previous practice of producing public records, including the cause of death, did not favor disclosure now because "[e]stoppel does not apply against the State."
>
> 4. The trial court erred by overruling Relator-Appellant's argument that the Respondent's change of law, by changing the interpretation of R.C. 3701.17, amounted to rulemaking and violated due process.

5. The trial court erred in concluding that mandamus is not a proper vehicle for addressing procedural due process violations.

## III. Discussion

### A. Standard of Review – Civ.R. 12(B)(6)

{¶ 6} Walsh generally challenges the trial court's granting of ODH's motion to dismiss pursuant to Civ.R. 12(B)(6). Under Civ.R. 12(B)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975). In ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). The dismissal of a complaint for failure to state a claim is proper when it appears, beyond doubt, that the plaintiff can prove no set of facts entitling him to relief. *Celeste v. Wiseco Piston*, 151 Ohio App.3d 554, 2003-Ohio-703, ¶ 12 (11th Dist.). When reviewing a decision on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this court's standard of review is de novo. *Foreman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-15, 2014-Ohio-2793, ¶ 9.

### B. Analysis

{¶ 7} For ease of discussion, we analyze together Walsh's first four assignments of error. In his first assignment of error, Walsh asserts the trial court erred in finding R.C. 3701.17 prohibited disclosure of the cause of death listed in ODH death records. Walsh's second assignment of error alleges the trial court erred in finding that the fact that death certificates, which contain the decedent's cause of death, are obtainable by the public, does not make this information obtainable through a public records request with ODH. Walsh's third assignment of error asserts the trial court erred in not finding that ODH's prior practice of producing public records that included cause of death for each decedent did not favor granting his current request. And in his fourth assignment of error, Walsh contends the trial court erred in not finding that ODH's change in interpretation of R.C. 3701.17 constituted improper rulemaking. All four of these assignments of error relate to the

primary issue of whether ODH must grant Walsh's public records request pursuant to Ohio's Public Records Act, R.C. 149.43.

{¶ 8} Statutory construction is a question of law subject to de novo review. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, ¶ 8; *State v. Fraternal Order of Police of Ohio, Inc., Ohio Labor Council, Inc.*, 10th Dist. No. 16AP-457, 2017-Ohio-1382, ¶ 12, citing *Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 10th Dist. No. 12AP-579, 2013-Ohio-3211, ¶ 9. A court's duty is to give effect to the words used in a statute, not to delete or insert words. *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. Moreover, "administrative deference has no place in the face of an unambiguous text." *State ex rel. Fire Rock, Ltd. v. Ohio Dept. of Commerce*, 163 Ohio St.3d 277, 2021-Ohio-673, ¶ 18.

{¶ 9} In ascertaining the meaning of a statute, a court's paramount concern is legislative intent. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34, citing *State ex rel. Asberry v. Payne*, 82 Ohio St.3d 44, 47 (1998). To discern legislative intent, a court first considers the statutory language, "reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, ¶ 40.

{¶ 10} This appeal centers on Ohio's Public Records Act, R.C. 149.43. The purpose of this statute "is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. Gannett Satellite Info. Network v. Petro*, 80 Ohio St.3d 261, 264 (1997). To this end, R.C. 149.43 requires a public office, upon request, to promptly make public records available for inspection or to provide copies of the records within a reasonable period of time. *See* R.C. 149.43(B)(1) (stating that "all public records responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours"). This Act further provides that the office or person responsible for public records must "organize and maintain public records in a manner that they can be made available for inspection or

copying" and to make "readily available to the public" a current copy of the office's records-retention schedule. R.C. 149.43(B)(2).

{¶ 11} For the purpose of R.C. 149.43, "public record" means "records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to section 3313.533 of the Revised Code." R.C. 149.43(A)(1). "Records" are "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). "[R]ecords the release of which is prohibited by state or federal law" are not "public records." R.C. 149.43(A)(1)(v).

{¶ 12} At issue in this appeal is whether the requested record contains information excluded from the general definition of a "public record" under R.C. 149.43. ODH argues Walsh's requested record includes information excluded from the definition of "public record" pursuant to R.C. 149.43(A)(1)(v), as release of that information is prohibited by state law. Namely, ODH asserts it may not release the record, as requested, because R.C. 3701.17 prohibits the release of information contained therein.

{¶ 13} R.C. 3701.17(B) states that "[p]rotected health information reported to or obtained by the director of health, the department of health, or a board of health of a city or general health district is confidential and shall not be released without the written consent of the individual who is the subject of the information," except under one of the circumstances set forth in R.C. 3701.17(B)(1) (release is necessary to provide treatment), R.C. 3701.17(B)(2) (release is necessary to ensure the accuracy of the information), R.C. 3701.17(B)(3) (release is required pursuant to search warrant or subpoena), or R.C. 3701.17(B)(4) (release is necessary to avert or mitigate a clear threat), none of which apply here. For the purpose of R.C. 3701.17(B), "[p]rotected health information" is "information, in any form, * * * that describes an individual's past, present, or future physical or mental status or condition, receipt of treatment or care, or purchase of health products" when either of the following two conditions applies: (1) the information "reveals the identity of

the individual who is the subject of the information" or (2) the information "could be used to reveal the identity of the individual who is the subject of the information."  R.C. 3701.17(A)(2)(a) and (b).  However, "[i]nformation that does not identify an individual is not protected health information and may be released in summary, statistical, or aggregate form.  Information that is in a summary, statistical, or aggregate form and that does not identify an individual is a public record under section 149.43 of the Revised Code and, upon request, shall be released by the director."  R.C. 3701.17(C).

{¶ 14}  Thus, applicability of R.C. 3701.17(B) to Walsh's requested record depends on whether that record contains information describing an "individual's past, present, or future physical or mental status or condition, receipt of treatment or care, or purchase of health products."  Walsh suggests that R.C. 3701.17(B) only applies to information describing a *living* individual's "physical or mental status or condition, receipt of treatment or care, or purchase of health products."  But such an interpretation inserts the word living into the statute.  An individual is a single human being or person, as distinguished from a group.  A person may be living or deceased.  And the statute's reference to an individual consenting to the information's release does not alter this analysis.  R.C. 3701.17(B) states that protective health information "is confidential and shall not be released without the written consent of the individual who is the subject of the information."  Obviously, a deceased individual cannot personally provide written consent.  However, the "past, present, or future" language in the statute indicates unrestricted temporal protection of that information.  Further, the authority to consent to the release of personal confidential information is transferred to the executor or administrator of a deceased individual's estate.  *See Saber Health Care v. Ohio Dept. of Job & Family Servs.*, 4th Dist. No. 20CA1107, 2020-Ohio-4044, ¶ 32 (the executor or administrator "stands in the shoes of the decedent").  Therefore, we reject Walsh's argument that R.C. 3701.17 only applies to information concerning living individuals.

{¶ 15} We further find that a decedent's cause of death, as indicated on the death certificate, necessarily indicates that individual's past physical status or condition.  Deaths in Ohio are documented on a form ODH prescribes.  R.C. 3705.07(A).  "The medical certificate of death shall be completed and signed by the physician who attended the decedent or by the coroner or medical examiner, as appropriate, within forty-eight hours

after the death or fetal death." R.C. 3705.16(C). "Medical certification" means "completion of the medical certification portion of the certificate of death or fetal death as to the cause of death or fetal death." R.C. 3705.01(I). A physician's cause of death determination reflected on a death certificate is an expert opinion on a medical question. *See Vargo v. Travelers Ins. Co.*, 34 Ohio St.3d 27, 30 (1987) (a coroner's finding as to a deceased's cause of death is "an expert opinion on a medical question"). Therefore, a decedent's cause of death indicated on the death certificate, as determined by the certifying physician, is information that identifies that individual's past physical status or condition because it identifies the injury, disease, or condition that led to the decedent's death. Under R.C. 3701.17, ODH is generally not permitted to release this information without written consent.

{¶ 16} Walsh argues, however, that R.C. 3705.23 operates to negate the confidentiality of this information pursuant to R.C. 3701.17. According to Walsh, because death certificates are available to the public pursuant to R.C. 3705.23, the information contained therein is not confidential pursuant to R.C. 3701.17. In support, Walsh correctly notes that Revised Code Chapter 3705 regulates the disclosure of vital statistic information, and that a member of the public may obtain a decedent's death certificate pursuant to R.C. 3705.23. R.C. 3705.23(A)(1) states that ODH "on receipt of a signed application and the fee specified in section 3705.24 of the Revised Code, shall issue a certified copy of a vital record." This copy "may be made by a mechanical, electronic, or other reproduction process. It shall be certified as a true copy by the director, state registrar, or local registrar who has custody of the record and shall include the date of issuance, the name of the issuing officer, the signature of the officer or an authorized facsimile of the signature, and the seal of the issuing office." R.C. 3705.23(A)(2). In this sense, death certificates, and the information contained therein, are publicly available records through the mechanism set forth in R.C. 3705.23.

{¶ 17} The issue therefore resolves to whether the ability to obtain a decedent's cause of death via his or her death certificate reflects the General Assembly's intent that this information, which is otherwise protected health information under R.C. 3701.17, may be released by ODH pursuant to a public records request under R.C. 149.43. Walsh asserts that nothing in R.C. Chapter 3705 restricts the disclosure of a decedent's cause of death, as

demonstrated by the requirement that this information be included on each death certificate. Walsh also reasons that because death certificates are public records, the requested death registry, containing the same information, is also a public record. In support of this reasoning, he cites R.C. 3705.16(D) and *Perez v. Cleveland*, 66 Ohio St.3d 397, 399 (1993). He also contends this court should defer to ODH's prior practice of releasing the requested information. Relatedly, he argues that ODH's change in statutory interpretation demonstrated improper rulemaking. We are unpersuaded.

{¶ 18} Death certificates are not public records for the purpose of R.C. 149.43. First, Walsh's citation to R.C. 3705.16(D) is unavailing. R.C. 3705.16(D) states: "Any death certificate registered pursuant to this section shall contain the social security number of the decedent, if available. A social security number obtained under this section is a public record under section 149.43 of the Revised Code." Although this provision indicates that social security numbers obtained under R.C. 3705.17 are public records under R.C. 149.43, it does not state that death certificates themselves are public records under R.C. 149.43. Thus, we are unpersuaded by Walsh's citation to this statutory provision.

{¶ 19} Second, we are also unpersuaded by Walsh's citation to *Perez*. In *Perez*, the Supreme Court of Ohio held that the appellants had "presented a real and justiciable controversy under R.C. 313.19, especially in light of the allegation that their reputations as parents and physicians are sullied by the coroner's determination of the cause of death of their infant daughter, as declared in the death certificate, which is indisputably a public record." *Perez* at 399. When *Perez* was decided, R.C. 3705.23(D) stated in part that "the state registrar and a local registrar, on request, shall provide uncertified copies of vital records in accordance with section 149.43 of the Revised Code." Consequently, at that time, uncertified copies of death certificates could be obtained pursuant to R.C. 149.43. *See State ex rel. Fenley v. Ohio Historical Soc.*, 64 Ohio St.3d 509 (1992) (undisputed that uncertified death certificate was a public record). In 2003, however, the General Assembly removed R.C. 3705.23(D) from this statute. 2003 Ohio H.B. No. 95. Under the current version of R.C. 3705.23, ODH may only issue certified copies of death certificates,[1] and those copies are only obtainable upon the submission of a signed application with the required fee. *See*

---

[1] In contrast, ODH may issue an uncertified certification of birth. *See* R.C. 3705.23(B).

R.C. 3705.24 and Ohio Adm.Code 3701-5-03. Thus, we disagree with Walsh's underlying premise that death certificates are public records pursuant R.C. 149.43.

{¶ 20} Walsh asserts that the public release of cause of death information on a death certificate is unrestricted, and, therefore, R.C. 3701.17 does not preclude the release of this information. To the contrary, the disclosure of a decedent's cause of death to the public under R.C. Chapter 3705 is restricted—ODH's issuance of a copy of a death certificate is contingent on an applicant adhering to the required procedure, and the issued copy must be certified as a true copy. R.C. 3705.23(A). Thus, while it may be true that the information in certified death certificates is released to an applicant without any restriction on further disclosure, its initial release is conditioned on the applicant complying with the statutorily mandated procedure for obtaining the copy and the copy being duly certified at issuance. The fact that a decedent's cause of death, which qualifies as protected health information under R.C. 3701.17, may be disclosed to the public by the issuance of a certified copy of a death certificate pursuant to R.C. 3705.23, does not mean that information is not otherwise prohibited from release for the purpose of R.C. 149.43. And adoption of Walsh's reasoning would permit a member of the public to obtain an uncertified copy of a death certificate, pursuant to R.C. 149.43, without having to comply with the statutorily mandated procedure to obtain a copy pursuant to R.C. 3705.23.

{¶ 21} Upon our review of all pertinent statutes, we find no indication of General Assembly intent to exclude a decedent's cause of death information from the confidentiality protection of R.C. 3701.17, except as necessary or required under that statute, or to the extent that information is obtainable pursuant to R.C. 3705.23. And because Walsh fails to demonstrate any statutory ambiguity on this dispositive issue, ODH's prior statutory interpretation is inconsequential to our analysis. Similarly, that ODH's statutory interpretation may have changed, which Walsh characterizes as an administrative agency rule change, has no impact on our application of the pertinent plain and unambiguous statutes. *See State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 38 (prior release of information to the public does not preclude government office from later denying request for the release of the same information).

{¶ 22} For these reasons, we conclude the trial court did not err in finding ODH has no duty to grant Walsh's public record request. Accordingly, we overrule Walsh's first, second, third, and fourth assignments of error.

{¶ 23} Lastly, we address Walsh's fifth assignment of error, which alleges the trial court erred in holding that mandamus is not a proper means to obtain his requested relief. We agree such a holding would be contrary to Ohio law because mandamus is an appropriate remedy to compel compliance with Ohio's Public Records Act. *State ex rel. Griffin v. Doe*, ___ Ohio St.3d ___, 2021-Ohio-3626, ¶ 5, citing R.C. 149.43(C)(1)(b). Mandamus is an appropriate remedy by which to compel compliance with R.C. 149.43. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 6; R.C. 149.43(C)(1)(b). But the trial court did not hold Walsh could not seek to enforce Ohio's Public Records Act in mandamus. Instead, in response to Walsh's claim that ODH's interpretation of R.C. 3701.17 violated his due process rights, the trial court resolved in part that Walsh had not presented a separate claim alleging a due process violation, and, thus, such a claim was not properly before it. The trial court also stated that mandamus is not a means to vindicate a due process violation. Ultimately, however, and as Walsh recognizes, the trial court's explanation for its rejection of his due process argument was effectively dictum because the trial court separately (and correctly) found he failed to demonstrate an entitlement to the requested writ. Because this dictum was not essential to the trial court's holding, analysis of the issues discussed therein is not necessary for our resolution of this appeal. As such, we overrule Walsh's fifth assignment of error.

## IV. Disposition

{¶ 24} Having overruled all five of Walsh's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, J., concurs.
JAMISON, J., concurs in part and dissents in part.

DORRIAN, J., concurring.

{¶ 25} I concur with the majority that the trial court did not err in dismissing Walsh's writ of mandamus. I write separately to additionally observe that the specific records requested by Walsh included a request for the first, middle and last name, last known address, social security number, and possibly other identifying information regarding each decedent. Because the records requested both: (1) described the decedents' past physical status or condition, receipt of treatment or care or purchase of health products, and (2) included information that reveals the identity of each decedent or could be used to reveal the identity of each decedent, the records met the definition of protected health information pursuant to R.C. 3701.17(A)(2). Had Walsh's request not included a request for information that reveals the identity of each decedent or information that could be used to reveal the identity of each decedent, e.g., name, last known address, social security number of each decedent, the request would not have met the definition and would not have been exempted from the definition of public records pursuant to R.C. 149.43(A)(1)(v) and 3701.17(B). "Information that does not identify an individual is not protected health information and may be released in summary, statistical or aggregate form. Information that is in a summary, statistical or aggregate form and that does not identify an individual is a public record under section 149.43 of the Revised Code and, upon request, shall be released by the director." R.C. 3701.17(C).

JAMISON, J., concurring in part and dissenting in part.

{¶ 26} I agree with the majority in disposition of assignments of error two, three, four, and five, but respectfully dissent on assignment of error one and would order that the trial court grant Walsh's writ of mandamus in part and order ODH to release records after the protected health information is redacted.

> The Public Records Act "mandates access to public records upon request unless the requested records are specifically excepted from disclosure." *Lucas Cty. Bd. of Commrs.*, 88 Ohio St.3d at 170, 724 N.E.2d 411, citing *State ex rel. Miami Student v. Miami Univ.*, 79 Ohio St.3d 168, 170, 1997-Ohio-386, 680 N.E.2d 956 (1997). "Release may be prohibited by an exception or by another statute providing protection to the subject of the information sought." *Cuyahoga Cty. Bd. of Health v. Lipson*

*O'Shea Legal Group*, 145 Ohio St.3d 446, 2016-Ohio-556, 50 N.E.3d 499, ¶ 6. The records "custodian has the burden to establish the applicability of an exception" to release or access. *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30. Exceptions "are strictly construed against the public-records custodian." *State ex rel. Mahajan v. State Med. Bd. of Ohio*, 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280, ¶ 24. The PRA itself " 'is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records.' " *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 1996-Ohio-214, 662 N.E.2d 334 (1996).

*State ex rel. CNN, Inc. v. Bellbrook-Sugarcreek Local Schools*, 2d Dist. No. 2019CA0047, 2019-Ohio-4187, ¶ 12.

{¶ 27} Although the Public Records Act is construed in favor of disclosure of public records, the request is prohibited because Walsh requested both information that described the decedents' past physical status or condition and information that reveals the identity of each decedents protected health information pursuant to R.C. 3701.17(A)(2).

{¶ 28} In *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 145 Ohio St.3d 446, 2016-Ohio-556, ¶ 3, the trial court reviewed the records requested pursuant to the Public Records Act, R.C. 149.43, and concluded that release would violate R.C. 3701.17. Cuyahoga County BOH moved for summary judgment which was subsequently granted. Lipson appealed. Upon review:

> "[t]he court of appeals reversed, concluding that the trial court's "blanket exemption" was inappropriate because many of the records, even those that contain "protected health information," contain other information that is not excepted from disclosure. The court declared that instead of withholding all records, Cuyahoga County BOH must examine each document, redact any protected health information, and release any remaining unprotected information not otherwise excepted. 2013-Ohio-5736, 6 N.E.3d 631, ¶ 31." *Id* at ¶ 4.

{¶ 29} Cuyahoga County BOH then appealed to the Supreme Court of Ohio. The records request sought "documentation or information of all homes * * * in Cuyahoga County where a minor child was found to have elevated blood lead levels in excess of 10

[mg/dl]."  *Id.* at ¶ 10.  Although the Supreme Court held that the request was inextricably linked to protected health information, the case was "remand[ed] to the trial court to review first the sample files and, if necessary, all the responsive information in the possession of the Cuyahoga County BOH to determine what information, if any, can be released after all protected health information is redacted."  *Id.* at ¶ 12.

{¶ 30} As in the above case, ODH has a clear legal duty to release the records with redacted protected health information.  Walsh has a right to the public records requested as the Public Records Act is construed in favor of disclosure of public records.  I do agree with the majority that Walsh's public records request contains protected health information, but I would remand to the trial court to grant the writ of mandamus, review the records, and determine what can be released after the protected health information is redacted.

_____